**HENDEL et al. v. KAM WATER HEAT-ER MFG. CO., Inc.**

Civ. No. 12480.

United States District Court
E. D. New York.

Feb. 6, 1953.

Harry Price, New York City, for plaintiffs.

Henry Turin, New York City, for defendant.

INCH, Chief Judge.

In this action for patent infringement and unfair competition, defendant moves for summary judgment upon the grounds of noninfringement of the patent in suit and the lack of any genuine issue of fact as to the claim of unfair competition, and for an award of reasonable attorney's fees pursuant to Title 35 U.S.C. § 70. For the purposes of this motion defendant raises no question as to the validity of the patent.

568

The patent in suit is No. 2,407,276 for "Shock Absorber for Hydraulic Systems". As appears from paragraph 1 of plaintiff's answers to defendant's interrogatories, only Claims 1, 2 and 3 of the patent in suit are alleged to be infringed by defendant's device.

The specifications of the patent in suit describe it as "a continuation in part" of another application, Serial No. 335,226 filed by the plaintiff-patentees on May 15, 1940. The Patent Office file wrappers and the applications for both patents have been submitted on this motion, and a brief discussion of their contents is helpful on the issue of infringement here presented.

It appears that shock absorbers or anti-knock devices, consisting of pipes, tubing and coils in various forms, to prevent so-called "water hammer" in water pipes is old in the art. The plaintiff-patentees in their earlier application, Serial No. 335,-226, claimed as their invention a coiled tube in connection with a fluid system with the coil closed at one end. It is to be noted that the drawings attached to this earlier application depict a device almost identical to the defendant's device which is alleged to infringe the patent in suit. All the claims made in the earlier application were rejected as unpatentable over the so-called "Miller", "Gillen" and "Barriol" patents cited by the Examiner. Because of a failure to prosecute, the application went to abandonment on April 20, 1942. On March 1, 1943 a petition to revive the application was granted. However, the application of the patent in suit having been filed on January 12, 1943, the patentees abandoned the earlier application, and on March 4, 1943 obtained permission to amend the application of the patent in suit to indicate that it was "a continuation in part" of the earlier application.

Turning now to the application of the patent in suit, it appears that the structure claimed by the patentees was again a coiled tube in connection with a fluid system with the coil closed at one end, but this time in combination with a so-called "water trap" member, which element is described as the "complete U bend 13". On June 8, 1943 all claims in the application were rejected as met by the cited art, including the "Gillen" and "Miller" patents. In a letter dated December 6, 1943 the patentees urged the Examiner to reconsider his action on the ground that the references cited did not suggest a "water trap" and that their application provided for a "water trap", or, as they understood the term to be used in the plumbing art, "a downward U or S bend in a pipe line".

Nevertheless, Claims 1 to 4, inclusive, and 11 of the application as filed, having all been drawn generally to a coiled tube sealed at its free end, were again rejected as unpatentable, and this time specifically in reliance on the structure shown in the "Barriol" patent. However, Claims 5 to 10, inclusive, of the application, as filed, which had all been drawn specifically to the "water trap" or "U bend" element in combination with the coiled tube, were allowed and are now Claims 1 to 6 of the patent.

As above stated, only Claims 1, 2 and 3 are in suit, and after comparing defendant's device with these claims I fail to find any issue of fact on the question of infringement. Defendant's device is merely a coiled tube having a direct inlet connection at one end, and it is closed at the other end. Plaintiff's repeated claims covering just such a device were consistently rejected by the Patent Office. The history of both patent applications illustrates that the patentees were compelled to introduce the "water trap" or "U bend" element to avoid rejection of their claims, and in my judgment that element is the substance of plaintiff's patent. Obviously defendant's device does not embody the "U bend" as described in Claims 1, 2 and 3, neither does it have any "horizontal inlet length" or "straight inlet run", as described in Claims 1 and 2, nor any "indicator" as described in Claim 3. It is plain from the above history that plaintiff's claims have been strictly limited to a combination of particular elements, including the "U bend", and it is equally clear that defendant's device does not infringe those claims as thus restricted.

Plaintiffs contend that they are entitled to equivalent structures. The an-

swer to that contention is found in Liberman v. Ruwell, 3 Cir., 170 F. 590, at pages 592-593:

"* * * where a patent depends for its novelty over the prior art upon a single limited feature of construction, the claims cannot be expanded by any doctrine of equivalents to cover a device which lacks that single essential feature. Dealing with the application of the doctrine of equivalents, in Wagner Typewriter Co. v. Wyckoff et al., 151 F. 585, 81 C.C.A. 129, the Circuit Court of Appeals said: 'Such an argument would hardly be permissible were we concerned with a broad fundamental patent, but in a patent strictly limited to a specific construction, it is wholly irrelevant. Gathright obtained his second patent because he convinced the Patent Office officials that he had made an improvement in the mechanism of the first patent; and we are now asked to hold as an infringer one who does not use the improvement. This cannot be done.'"

■ In my opinion, therefore, no genuine issue of fact is presented on the question of infringement. The subject matter of the patent is simple, and the devices of both parties have been submitted to the Court, together with the Patent Office file wrappers and contents of the patent in suit and the earlier application. "When it appears, in a patent infringement suit, that extrinsic evidence is not needed to explain the terms of art involved and the court is able, from mere comparison, to comprehend what the invention described in a patent is, and, from a mere comparison of the structures, to determine whether one device infringes on another, the question of infringement or no infringement is one of law." Young v. Ralston-Purina Co., 8 Cir., 88 F.2d 97, 101. When defendant's device is compared with the patent claims in suit, in the light of their history, the conclusion is inescapable that plaintiffs' patent is not infringed.

■ Since plaintiffs' claim for infringement must be dismissed, plaintiffs' cause of action for unfair competition also falls, there being no diversity of citizenship between the parties. Moreover, plaintiffs have presented no evidentiary facts to support their claim of unfair competition, and on the argument of the motion plaintiffs' counsel conceded that there was no substance to the claim.

■ Accordingly, defendant's motion for summary judgment is granted. However, defendant's application for an award of attorney's fees is denied.

Settle order.